UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| STEPHEN J. BARTON and KENNETH D. BILES,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL J. SMITH, DONALD M. PATTON, and RELYANT GLOBAL, LLC,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br>Case No. 3:17-CV-92-TC-HBG |

This case arises out of a dispute between current and former members of Relyant LLC (Relyant or Company), which has been performing contracts for the United States government. Plaintiffs Stephen Barton (a current member of Relyant) and Kenneth Biles (a former member of Relyant), seek financial returns from the Company, which they say were unlawfully withheld by Individual Defendants Daniel Smith and Donald Patton, the managing members of Relyant. According to the complaint, Mr. Smith and Mr. Patton fraudulently transferred those funds to their company, Defendant Relyant Global LLC (Global) (not to be confused with Relyant, which is a completely separate entity).

Plaintiffs bring claims for breach of contract, fraud-based torts, breach of fiduciary duty, unjust enrichment, and conversion, and they ask for an equitable accounting. Defendants have filed motions for summary judgment.

1

Because the court finds that genuine disputes of material facts exist, the court DENIES the motions.

## FACTUAL BACKGROUND[1]

### Relyant LLC Operating Agreement

Central to this suit is the 2011 Fifth Amended and Restated Operating Agreement between members of Relyant (Operating Agreement).[2] At the time the agreement was executed, all the individuals in this suit were members of Relyant. That agreement (attached as Exhibit A to Smith and Patton Mot. Summ. J., ECF No. 28-1) is the subject of the Plaintiffs' breach of contract claim and contains language upon which Defendants rely to argue that summary judgment is appropriate.

The parties entered into the Operating Agreement to resolve a financial issue Relyant faced in 2011. That issue arose after both Mr. Barton and Mr. Smith loaned a substantial amount of money to Relyant.

At that time, Defendants Smith and Patton, who were also Relyant's managers, wanted to establish a line of credit which Relyant could use to finance its operations and invest in equipment, facilities and other assets needed to expand the business. But Relyant had difficulty obtaining a loan or line of credit in light of its loan obligations to Mr. Barton and Mr. Smith.

---

[1] The court sets forth the factual background with the understanding that at the summary judgment stage it must make all reasonable factual inferences in the non-movant's favor. Redlin v. Gross Pointe Public Sch. Sys., 921 F.3d 599, 606 (6th Cir. 2019). In addition, much of the evidence here is taken from declarations and deposition testimony submitted by both sides. The court takes those statements at face value, for it may not weigh or assess the credibility of sworn statements when evaluating a motion for summary judgment. Savage v. Fed. Express Corp., 856 F.3d 440, 446 (6th Cir. 2017).
[2] Relyant is not a party to this suit, although it plays a central role in the dispute between the parties.

To solve that problem, Mr. Barton agreed to convert the debt Relyant owed to him into 2,314.537 non-voting Class B Units of Relyant, at a purchase price of $939.20 per unit, for a total of approximately $2.2 million. That resolution of the debt was reflected in the Operating Agreement, through which Mr. Barton, as a Class B member, was entitled to monthly preferred return payments from Relyant's profits.[3]

Under the Operating Agreement, Mr. Smith was the only other Class B Member. As priority Class B members, Mr. Barton and Mr. Smith received distributions before the Class A members, which included Mr. Biles and Mr. Patton. Mr. Biles, who is no longer a member of Relyant, owned five percent of the Class A Units.

After the Operating Agreement was finalized, Mr. Smith and Mr. Patton, on behalf of Relyant, obtained a line of credit with Bank of America.

**Bank of America Foreclosure and Sale of Relyant Assets**

In 2013, unbeknownst to Mr. Barton and Mr. Biles, Relyant defaulted on its line of credit with Bank of America. In 2014, Bank of America seized about $500,000 in Relyant's operating account and began a foreclosure sale of the loan collateral. That collateral was auctioned off at the Blount County courthouse on May 29, 2014. The only person or entity who bid on the collateral was a local attorney, James Rickman, who offered $377,001 on behalf of Tennessee Rental Holdings, LLC (TRH), an entity that was formed on May 15, 2014, approximately two weeks before the foreclosure sale. The bank accepted TRH's bid.

Plaintiffs have presented evidence that TRH was not an independent third-party buyer but, through Mr. Rickman, was an agent of Relyant and Defendants Smith and Patton. Mr.

---

[3] In 2010, his return per unit was $50. (See Schedule A to Operating Agreement (defining "Preferred Returns").) That rate went up incrementally each year, with a final annual rate of $70 per unit beginning in 2014 and extending for the length of the agreement. (See id.)

3

Rickman, during his deposition, testified that he did not create TRH, never had any ownership interest in or control over TRH, and only appeared at the foreclosure sale in exchange for $5,000 to bid on behalf of Relyant using TRH as the vehicle to accomplish that goal. He did not use any of his own money to purchase Relyant's assets; rather, he used money provided by either Relyant, Defendants' attorney (who was the registered agent for TRH), or both. He also testified that in preparation for the foreclosure purchase, he arranged with the Defendants' attorney and other individuals to go to Relyant's offices shortly before the foreclosure sale, where they discussed how much they would be willing to bid on the property.

After TRH acquired Relyant's collateral, Relyant agreed to continue performing and staffing its existing contracts on behalf of TRH.[4] But only one week after the sale, Defendants Patton and Smith reached an agreement with Mr. Rickman to purchase TRH (in other words, the Relyant assets sold at auction), for the same price TRH had paid, plus a $5,000 payment to Mr. Rickman for his service. As a result of that agreement, TRH was transferred to a new company created by Defendants Patton and Smith, called Veterans Holding Group LLC (VHG). According to the Plaintiffs, VHG purchased TRH using funds earned by Relyant.

Approximately one month later, on July 8, 2014, Defendants Smith and Patton formed Global. Global obtained Relyant's assets from VHG and is performing Relyant's contracts as well as its own government contracts using Relyant's assets.

Viewing this evidence in a light most favorable to the Plaintiffs, it appears that Mr. Smith and Mr. Patton transferred Relyant's assets to Global over a short period of time through a set of

---

[4] These government contracts were subject to regulations requiring that they be transferred only through novation after complying with specific procedures and obtaining consent. None of Relyant's contracts were novated, so Relyant (or Global, as Plaintiffs contend) continued to perform them.

straw purchases.

**Representations to Mr. Barton**

Throughout this time, according to Mr. Barton, he was deceived by Mr. Smith and Mr. Patton who misrepresented Relyant's financial condition after he began asking why Relyant stopped making payments to him. Mr. Smith told Mr. Barton that Relyant "was going to go under," "was barely paying the bills," and was ready to file for bankruptcy. (Decl. of Stephen Barton ¶ 8, ECF No. 37-1.) Both Mr. Smith and Mr. Patton told Mr. Barton that Relyant was "not doing well," "lacked work," and "would have to shut down." (Id.) In May 2016, after the foreclosure sale, they told Mr. Barton that "in February 2014, Bank of America had foreclosed on Relyant's assets and had 'wiped out' its bank accounts." (Id. ¶ 17.)

There were significant omissions as well. Throughout Mr. Barton's quest for payment and information about Relyant's financial status, Mr. Smith and Mr. Patton did not tell Mr. Barton that Relyant had defaulted on the line of credit with Bank of America, that they had attempted to negotiate a resolution of liability to Bank of America, or that there were any plans or strategies for resolving the debt to Bank of America. They did not tell him that Bank of America was foreclosing on the Relyant's assets, much less that Relyant sold its assets to TRH.

Defendants declare that their representations about Relyant's financial situation were accurate. But Plaintiffs' expert witness testimony and Relyant's financial documents contradict Defendants' characterization of Relyant's financial status.

According to Plaintiffs' expert witness Jimmy Jackson, Relyant's 2014 and 2015 tax returns reflect a substantial profit and distributions paid to both Mr. Smith and Mr. Patton at a time when they say Relyant was in dire financial straits. (See Decl. of Jimmy J. Jackson (Sealed), ECF No. 62-10.) For instance, Relyant's 2014 tax return reported ordinary business

5

income of over $1.7 million with a payment of distributions to Mr. Smith (approximately $400,000) and Mr. Patton (approximately $200,000). Its 2015 tax return reported payment of distributions of approximately $108,000 to Mr. Smith and approximately $54,000 to Mr. Patton.

Mr. Jackson, after analyzing these and other financial documents, concluded that Relyant had profits and sufficient cash flow and assets from which to make Class B preferred return payments and distributions. He said that although this determination could be made from the face of the records, it was even more apparent when one corrected for what he concluded were improper accounting methods applied by Mr. Smith and Mr. Patton. Mr. Jackson was referring to records showing that after May 19, 2014, the Defendants attributed profits to TRH and Global rather than Relyant based on the fiction that TRH, and not Relyant, owned Relyant's contracts and past performance. Plaintiffs contend that if Relyant were "on the verge of bankruptcy" in early 2015, it was only because of Defendants' efforts to surreptitiously shift Relyant's assets and business to other entities controlled by them.

Defendants counter with the competing opinion of their expert witness, Michael Schnell. (See Decl. of Michael A. Schnell, Ex. D to Consolidated Reply, ECF No. 53-4.) They also challenge Mr. Jackson's expertise to issue his opinion. But the Defendants did not ask for a Daubert hearing, and the court will not entertain challenges to expert witness credentials in the context of the motions now before it.

Accordingly, the court, accepting both experts' opinions, finds there is a material factual dispute about Relyant's financial health which cannot be resolved on summary judgment.

**Representations to Kenneth Biles and His Alleged Waiver of Claims**

Throughout all of this, Plaintiff Kenneth Biles continued working on Relyant's contracts. Mr. Biles, in addition to being a Class A member, was an employee of Relyant until February 2014, after which he worked as an independent contractor for Relyant. Despite the change in his

status, he continued to work on contracts held by Relyant or that Relyant was hoping to be awarded. He was also paid with checks issued on Relyant's bank account.

In January 2015, months after the foreclosure sale, Mr. Smith told Mr. Biles that Relyant was "on the verge of bankruptcy," and would have to be shut down. (Decl. of Kenneth Biles ¶ 8, ECF No. 37-2.) As with Mr. Barton, neither Mr. Patton nor Mr. Smith told Mr. Biles about the defaulted loan, the foreclosure sale, the subsequent transfer of assets to TRH and ultimately to Global, and distributions to themselves after the sale. According to Mr. Biles,

> Mr. Smith instead warned me that I was in danger of being held liability [*sic*] for Relyant, LLC's debts. Specifically, Mr. Smith told me that if I did not sell my shares, I would be liable [*sic*] "liable for the millions of dollars that are going to be owed" to Relyant's creditors. Mr. Smith then offered to have the company buy back my Class A Units at a low price, $7,000. Mr. Smith said this was the best he could do.
>
> When I asked Mr. Smith why Relyant could only offer me $7,000, Mr. Smith stated that he and Mr. Patton would have to sell Relyant's assets "on the courthouse steps for pennies on the dollar."

(Id. ¶¶ 10–11.)

Based on Mr. Smith's representations, Mr. Biles agreed to enter into the Membership Interest Purchase Agreement with Relyant. (See Feb. 5, 2015 Membership Interest Purchase Agreement, attached as Exhibit G to Smith and Patton Mot. Summ. J., ECF No. 28-7.) In that February 2015 document, Mr. Biles agreed to give up his interest in Relyant (his five percent of the Class A units) in exchange for $7,000 (amounting to about eight cents per share). He also signed an incredibly broad release and waiver of claims against Relyant and its members, most notably Mr. Smith and Mr. Patton. (See id. §§ 3.A., 3.C.) But Mr. Biles, in his declaration, says that "had Mr. Smith or Mr. Patton told me the … information which they withheld, I would not have agreed to sell my shares back to the company for $7,000 and I would not have signed the Membership Interest Purchase Agreement." (Biles Decl. ¶ 13.)

7

Despite Mr. Biles' claim that the waiver agreement was fraudulently induced, Defendants rely on the waiver to support their motion for summary judgment.

## ANALYSIS

The Defendants raise numerous grounds for summary judgment. First, they contend that Section 14.5 of the Operating Agreement (titled "Claims of the Members") requires Mr. Barton and Mr. Biles to look to Relyant for their financial returns and because Relyant has no assets, the Plaintiffs have no recourse. Second, they assert that the alleged fraudulent statements were true, did not represent past or present facts, or were opinion. Third, they cite to the Membership Interest Purchase Agreement to argue that Mr. Biles has waived his claims. Fourth, they say the conversion and unjust enrichment claims are derivative and must be dismissed for lack of standing and because Plaintiffs have not satisfied the procedural requirements to bring such claims. Alternatively, the Defendants maintain that Plaintiffs cannot establish a prima facie case for conversion or unjust enrichment. Finally, they challenge the claims by arguing that Plaintiffs cannot prove damages because payments were conditioned on a profitable company, and Relyant's legitimate financial losses meant that it did not have the ability or obligation to make payments to the Plaintiffs.

### Standard of Review

"Summary judgment is proper where 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" Redlin v. Gross Pointe Public Sch. Sys., 921 F.3d 599, 606 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). It should not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences from the

evidence in a light most favorable to Plaintiffs, the non-movants.  Redlin, 921 F.3d at 606.

**<u>Section 14.5 of the Operating Agreement</u>**

Citing to Section 14.5 of the Operating Agreement, the Defendants assert that Plaintiffs have no right to bring their claims.  That section limits certain claims by members:

> Members and former Members <u>will look solely to the Company's assets for the return of their Capital Contributions</u>, and if the assets of the Company remaining after payment of or due provision for all debts, liabilities and obligations of the Company are insufficient to return such Capital Contributions, the Members and former Members <u>will have no recourse against the Company or any other Member</u>.

(Operating Agreement § 14.5 (emphasis added).)

But Plaintiffs are not seeking return of their capital contributions.  They seek preferred returns and distributions, which are not governed by § 14.5.  (See Operating Agreement Definition Schedule, Schedule A, (defining "Capital Contribution" and "Preferred Return").)  Plaintiffs say they were denied such returns as a result of Defendants' actions.  Because Section 14.5 does not apply to such returns, it is not a valid basis to dismiss Plaintiffs' claims.

**<u>Alleged Fraudulent Statements</u>**

As noted above, Mr. Smith and Mr. Patton told both Mr. Barton and Mr. Biles that Relyant was facing financial ruin.  Defendants maintain that the statements were true.  Despite the Defendants' conclusory assertions that the information was accurate, Plaintiffs have presented evidence (discussed above) that raises material questions about the veracity of Mr. Smith's and Mr. Patton's statements to Mr. Barton.

Given the record before the court, including the competing expert witness opinions and Mr. Rickman's testimony, the court finds there is a genuine dispute of material fact about whether the statements about Relyant's financial condition were true.  Accordingly, summary

judgment on the fraud claims is not appropriate.

**Waiver in the Membership Interest Purchase Agreement**

The Defendants argue that Mr. Biles' claims must be dismissed because he waived his claims when he signed the Membership Interest Purchase Agreement. Mr. Biles responds that the agreement was fraudulently induced so it is not enforceable.

Mr. Biles has presented evidence that he signed the agreement in reliance on fraudulent statements. He has also provided evidence that Mr. Smith withheld material information and that if Mr. Biles had known that information, he would not have sold his interest or granted any release of liability.

Given this evidence, the court cannot find that the contract's waiver language bars Mr. Biles' claims.

**Conversion and Unjust Enrichment**

**The Claims are not Derivative.**

Defendants assert that Plaintiffs lack standing to bring their conversion and unjust enrichment claims because those claims are derivative in nature—i.e., the claims arise from alleged injury to Relyant. And, they maintain, because Plaintiffs did not satisfy the prerequisites for asserting a derivative claim,[5] they are barred from bringing the claims here.

As a general proposition, a limited liability company member does not have standing to sue for a harm that is done to the company but must instead bring a claim as a derivative action on behalf of the LLC. Keller v. Estate of McRedmond, 495 S.W.3d 852, 869 (Tenn. 2016). To determine whether a claim is derivative, the court "should look to the nature of the wrong and to

---

[5] See Fed. R. Civ. P. 23.1 (listing pleadings requirements for derivative claims); Tenn. Code Ann. § 48-249-801 (listing prerequisites for bringing derivative claim).

10

whom the relief should go." Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004), quoted in Keller, 495 S.W.3d at 875 (adopting Tooley standard for determining whether a claim is direct or derivative).

According to Plaintiffs, Defendants misappropriated Relyant's assets (including profits that should have been distributed as preferred returns) for use in Global and to pay themselves distributions. By doing so, say Plaintiffs, the Defendants conferred a benefit upon themselves and to the detriment of the Plaintiffs.

Although Relyant might also have been injured and so could potentially assert similar causes of action against the Defendants, that does not change the analysis. See Keller, 495 S.W.3d at 868 ("A direct lawsuit is permitted even if the corporation also may have a cause of action growing out of the same wrong.") (internal quotation marks and citation omitted).

Plaintiffs have alleged that they were directly injured because Defendants' wrongful appropriation of Relyant's assets deprived them of the returns and distributions to which they were entitled. Because Plaintiffs are requesting relief that would go directly to them, their claims are direct, not derivative.

**Plaintiffs Have Alleged a Prima Facie Case of Conversion and Unjust Enrichment.**

Defendants contend that Plaintiffs have not stated a prima facie case of conversion or unjust enrichment because "no benefit related to Relyant, LLC was ever conferred upon (or accepted by) Relyant Global, and the circumstances surrounding the sale of Relyant, LLC's assets by a third party creditor at a public sale were not 'inequitable' in any respect." (Relyant Global's Mot. Summ. J. at 12, ECF No. 29.) The absence of facts to support these essential elements, Defendants assert, entitles them to summary judgment on those equitable claims.

To succeed on a claim for conversion, a party must establish (1) the appropriation of his property to another's own use and benefit, (2) by the intentional exercise of dominion over it, (3)

11

in defiance of the true owner's rights. Ralston v. Hobbs, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009). Focusing primarily on the first element, Defendants say Plaintiffs have not presented evidence that Global misappropriated Relyant's assets.

> [A]ll of the assets of Relyant, LLC … were sold to Tennessee Rental Holdings, LLC at a publicly-advertised and noticed foreclosure sale on May 19, 2014. Moreover, Relyant Global did not even exist until months after the Relyant, LLC assets had already been sold on the courthouse steps. To be clear, no assets have ever been transferred from Relyant, LLC to Relyant Global.

(Relyant Global's Mot. Summ. J. at 10, ECF No. 29 (internal record citations omitted).)

Defendants' challenge to the unjust enrichment claim is similar. A prima facie case of unjust enrichment contains the following elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotation marks, alteration, and citation omitted).

According to Defendants, TRH was a "third-party purchaser" and so "no assets of Relyant, LLC were transferred to Relyant Global." (Relyant Global's Mot. Summ. J. at 11.) Consequently, they say, "no benefit related to Relyant, LLC was ever conferred upon Relyant Global." (Id.) Additionally, they contend that circumstances were not inequitable because Relyant's assets were sold "by a third party creditor at a public sale…." (Id. at 12.)

> As the Bank of America foreclosure sale was a public sale, advertised in the newspaper and available online, Plaintiffs were free to appear and bid on Relyant, LLC's assets. They chose not to do so, despite admitting in their Amended Complaint that Mr. Smith and Mr. Patton informed them of the impending foreclosure sale.

(Id. at 11–12 (internal citations omitted).)

But Plaintiffs have presented evidence that Global received Relyant's assets through a series of straw purchases orchestrated by the individual Defendants. As for the equity element,

12

the circumstances should not be confined to the public nature of the sale. The material facts raised by the Plaintiffs include the actions leading up to the public sale (including the misrepresentations and omissions alleged by the Plaintiffs), and the quick successive transfer of those assets from TRH (apparently acting as an agent of Relyant and its managers (i.e., the individual Defendants)) to the individual Defendants' holding company VHG, and finally to the individual Defendants' company Global.

All of that creates a genuine dispute of material fact not only concerning the equitable nature of the circumstances but also whether Global received (or misappropriated) Relyant's assets.

**Damages**

Defendants argue that "Plaintiffs' claims based upon an alleged failure to pay preferred returns or distributions must be dismissed because Relyant had no profits between 2012 and the foreclosure of the company's assets on May 19, 2014, with which to pay preferred returns or make distributions." (Smith and Patton Mot. Summ. J. at 9, ECF No. 28.) Without profit, Defendants say, Relyant was not required to make allocations to capital accounts or pay out distributions.

Defendants' claims that Relyant had no profits are contradicted by the testimony of the expert witness Mr. Jackson, as well as the tax returns and financial records upon which he relied. That is sufficient to create a genuine dispute of material fact.

**ORDER**

For the reasons set forth above, the Motion for Summary Judgment filed by Daniel Smith and Donald Patton (ECF No. 28), and Relyant Global LLC's Motion for Summary Judgment

(ECF No. 29) are DENIED.

SO ORDERED this 28th day of May, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge